## THE PEOPLE *vs.* PELHAM.

An *attachment* against an *administrator* for not accounting, may be issued
by a *surrogate* to a county different from that of which he is surrogate, and
it may there be executed.

Notice of the suing out of a *habeas corpus*, to relieve a party from imprison-
ment, must be given to the party interested in continuing the imprison-
ment, although the latter do not reside in the county where the former is
imprisoned, or where the proceeding is had for a *habeas corpus;* it must
be given without reference to residence.

SURROGATE's COURT.    Pelham was arrested by the she-
riff of *Erie* county, on an *attachment* issued by the *surro-
gate* of *Monroe*, tested 29th December, 1832, returnable in
16 days, for the neglect of Pelham, as administrator of the
estate of one William Hagar, deceased, to render an ac-
count of his administration, letters of administration having
been granted to him by the surrogate of Monroe.    A
commissioner in *Erie* county issued a *habeas corpus*, di-
recting the sheriff of Erie to bring Pelham before him, with
the cause of his detention; and on his being brought up,
the commissioner being of opinion that a surrogate had no
authority to issue an attachment to be executed in a county
different from that of which he was surrogate, *discharged*
Pelham from custody.    The commissioner certified that no-
tice of the granting of the *habeas corpus* was not given to
any individual interested in continuing the imprisonment, he
being informed, on inquiry, that there was no person in Erie
county to whom notice could be given.    The proceedings
before the commissioner were brought up by *certiorari.*
The case was argued here by

*S. Stevens,* for the plaintiffs.

*C. Kirkland,* for the defendant.

*By the Court,* SAVAGE, Ch. J.    Whether the surrogate had
power to commit or not is the principal question.    It is also
contended that the commissioner proceeded irregularly in not
requiring notice to be given.    Both questions depend entirely

upon the statutes; it will be necessary therefore to refer to them. *First,* as to the power of the surrogate to commit out of his own county: "The surrogate of each county shall have sole and exclusive power within the county to grant letters of administration in certain cases." 2 *R. S.* 73, § 23. There is no question in this case but what administration was properly granted by the surrogate of Monroe county. An executor or administrator is bound in duty to return an inventory within three months. If he does not within that time, or such further time as the surrogate may allow, not exceeding four months, return such inventory, the surrogate shall require him to do so within some short time, or show cause why an attachment should not issue against him; and if no cause is shewn, an attachment issues. 2 *R. S.* 84, 5, § 15, 16, 17, 18. An executor or administrator, after the expiration of 18 months from his appointment, may be required to render an account of his proceedings by an order of the surrogate; and obedience may be enforced, in the manner before directed, to compel the return of an inventory. 2 *R. S.* 92, § 52, 3. The surrogate of the county in which letters testamentary or of administration shall have been granted, shall be entitled to act under the provisions of this chapter in all matters relating to the estate upon which such letters were granted. 2 *R. S.* 117, § 24. Every surrogate shall hold a court within the county for which he was appointed, and shall have power to issue subpoenas and compel the attendance of any witness, in the same manner as courts of record, and to punish disobedience to such subpoena and to punish witnesses in the same manner and to the same extent as courts of record in similar cases; to issue citations to parties and compel their appearance; to enforce all lawful orders, process and decrees of his court by attachment, which shall be similar in form to those used by the court of chancery in analogous cases; and every officer to whom any citation, subpoena, attachment or other process issued by a surrogate shall be directed, shall execute the same in the same manner as if issued by a court of record. 2 *R. S.* 220, 1, 2, 3; § 1, 6, 9.

UTICA,
July, 1835.

The People
v.
Pelham.

In these several provisions of the statutes, no express pow⸱er is given in terms to issue process into any county in the state; nor is there any restriction upon the surrogate that his process shall be confined to the limits of his own coun⸱ty. He is limited as to the bounds within which he shall hold his court, but there is no limitation as to the service of any citation, subpœna, attachment or other process. The surrogate granting letters of administration has exclusive jurisdiction over the administrator appointed by him, in the settlement of the estate. *Suppose* the administrator, after obtaining letters of administration and possessing himself of the estate, removes out of the county in which letters of ad⸱ministration were granted; or suppose a case, which often exists, that letters of administration are granted to a person residing out of the county in which letters of administration are granted; is it not in the power of the surrogate granting administration, to compel the filing an inventory and subsequent rendering an account? Such surrogate has exclusive jurisdiction. No other surrogate has any power in the premises; and if the surrogate who granted administration has no jurisdiction, the law itself is a dead letter, because there is no mode of enforcing it, upon the construction contended for by the defendant in error. It is the duty of courts to give the statutes such a construction as will give to them force and efficacy, according to the intention of the legislature. It is clear to my mind that the surrogate is not limited to the bounds of his county; he may send a citation to any part of the state. So he may a subpœna; and if the subpœna is disobeyed, he may send an attachment for the witness who has refused obedience to the process. This power is given by giving the same effect to the subpœna of the surrogate as to the subpœna of courts of record. Power to issue an attachment into any part of the state necessarily results from the fact that exclusive jurisdiction is given to the surrogate granting administration; and power is given him to enforce his orders and decrees, without imposing any limitation of his process to his county.

In the particular case now before us, if the surrogate of Monroe has no jurisdiction, there is no mode of enforcing his decrees, nor any of compelling a performance of official duty;

but allowing to the surrogate the extent of the state in which to issue his process. the system becomes effective, consistent and harmonious. The commissioner erred in adjudging that the surrogate had no jurisdiction out of his own county. He also erred in supposing that no notice should be given, because the party intended did not reside within the county of Erie. It is impliedly admitted that there were persons in some other county to whom notice should have been given. The party interested in continuing the imprisonment is entitled to notice, without regard to his residence. 2 *R. S.* 569, § 46. He is a party in the court of the surrogate, and by the statute is entitled to notice. On both grounds the proceedings of the commissioner should be reversed.